The court will call the next case. 3-12-09-05 Equal Decision on Law Enforcement by Robert Manson v. Exelon Holman paneled by Emily Phillips Ms. Phillips Good morning, Your Honors. My name is Emily Phillips, and I represent Exelon Holman in this matter. This morning, I am going to argue Issue 3 in the briefs, and if time permits, Issue 2. There is a general prohibition against using a single factor as both an element in the offense and as an aggravating factor to impose a harsher sentence than might otherwise have been imposed. The reason for this prohibition against double enhancement is that it is assumed that the legislature took the factors inherent in the offense into account in determining the appropriate range of punishment for a criminal offense. Aggravated domestic battery is a domestic battery that results in great bodily harm, permanent injury, or disfigurement, and has a higher penalty attached than simple domestic battery. Thus, in designating aggravated domestic battery a class 2 offense, the legislature necessarily considered that these offenses are domestic batteries with permanent injuries. In this case, Holman was charged with and convicted of aggravated domestic battery for injuring his uncle Melvin's eyes. The evidence of great bodily harm in this case was Melvin's blindness. If there was no resulting blindness, then there would not have been great bodily harm, permanent disability, or disfigurement. The state specifically argued at closing of the trial that losing an eye is great bodily harm, and the state made this very same argument at sentencing. There was no additional evidence presented at sentencing about the harm or the injury that was not presented at trial. The judge followed along and relied on this factor, the great bodily harm, as the primary aggravating factor in imposing the maximum extended term sentence in this case. The judge said, I will sentence you to the maximum for 14 years based upon the nature of the crime, the permanent effects of what happened that day to Mr. Melvin, and he will never be able to overcome, and that is at 85%. Blindness was a factor in the offense, the great bodily harm, and the judge again relied on that very same blindness as the primary aggravating factor to impose the maximum extended term sentence in this case. Saldiver says that you can't rely on the end result as the primary aggravating factor. The end result here is the permanent blindness. Just as in Saldiver, the only factor stated by the court was the end result. In Saldiver it was the death, here it's the blindness. The judge could have based her decision to impose the maximum extended term sentence on the circumstances of the offense, but she didn't do that. She specifically stated that the reason she was sentencing Holman to the maximum extended term sentence was because of permanent effects of the injuries, blindness. This judge, in this case, did not consider the manner or circumstances of the injury as the primary aggravating factor. This judge considered the end result, the blindness, a factor that was already inherent in the offense. Are there any questions about the aggravating factor before I move on to the next issue? The state failed to prove beyond a reasonable doubt that the aggravated domestic battery here was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. First, there was no evidence of premeditation. The presence or absence of premeditation is among the most crucial considerations that courts look at when determining whether an offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. These injuries, this fight, they weren't planned. They occurred in the midst of a fight between Holman and Melvin. And according to Melvin, the fight was quick. The entire event lasted less than six minutes from the time that he got home from the casino until the police arrived. This was not a long, drawn-out incident. Holman reacted to the exigencies of the moment. There was no evidence of cold-bloodedness or evil. The state conceded that Melvin aggressively went after Holman, threatening to call the police, which is a significant threat to this particular defendant, who has a long-standing history of mental illness, psychotropic medication, and a well-known incident with the police from when he was a teenager where he was beaten while handcuffed on the ground by the police. Holman won a settlement from the police for this incident, and he subsequently suffers from paranoia and fear of the police. So Melvin's threat to call the police to this defendant was a significant threat. Holman's immediate reaction to Melvin's aggression certainly is not indicative of wanton cruelty. There is also no evidence of the force required to cause these injuries. It didn't indicate wanton cruelty? No, Your Honor. Exceptionally brutal or heinous behavior indicative of wanton cruelty. There's no evidence of the amount of force that's necessary to cause these injuries, how easy it is or difficult it is to cause this injury, whether it requires a significant amount of force over a significant amount of time. Melvin testified that Holman pinned him down, put a knee on each of his arms, took his thumbs, put them in his eye, and, quote, just stood up with all of his weight and was pressing down on them, end quote. Notably, Melvin did not testify that Holman pressed down with all of his weight. He testified that he stood up with all of his weight and then pressed down. There's no evidence of how much force Holman used or, again, how much force is necessary to cause this injury. The state could have easily presented this evidence. The state presented a paramedic who examined Melvin immediately after the incident as well as a doctor who examined Melvin on January 2nd two days afterwards. They could have easily asked either of these medical personnel about the specifics of the injury. How easy is it to cause this injury? How much pressure? How much time? How long does it take? But there's simply no proof. It may be that this is a very easy injury to cause and that it can happen very quickly and without much force. If that's the case, then this offense was certainly not accompanied by There's no proof one way or the other. Also, we don't know Melvin's state of health. It may be that it's easier to cause this injury in some people than other people due to medications or existing health concerns. The problem here is a failure of the state's proof to establish beyond a reasonable doubt that this offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. There's also no evidence of torture, sadism, threats, or gratuitous violence. Typically, the cases in which courts have found exceptionally brutal or heinous behavior involve prolonged torture or a callous disregard for human life. For example, in Mitchell, the Illinois Supreme Court found exceptionally brutal or heinous behavior indicative of wanton cruelty where the defendant repeatedly beat a 16-month-old with his hands, fists, and a belt, standing the child up after each beating and hitting him again when he fell. In Cox, a First District case, exceptionally brutal or heinous behavior was found where the defendant, after beating the child for months, immersed the child's hand in scalding water as punishment and then waited until the child died several days later before seeking medical help. These are the sort of cases in which courts have found exceptionally brutal or heinous behavior indicative of wanton cruelty. Finally, the extended term cannot be based on the severity of the injuries. The injuries, the blindness, was the great bodily harm in this case and, as such, was an element of the offense of aggravated domestic violence. These injuries can't be used a second time as the basis for the extended term sentence. Notably, the state doesn't make this argument. The medical testimony about how this injury was caused was necessary to establish something beyond the blindness to support the extended term, but the state did not present this. The way this case was tried and the way that the evidence came in in this case, the state failed to prove beyond a reasonable doubt that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. There is evidence of the case with regard to the circumstances of the blinding, correct? There is evidence of the circumstances of the blinding from Melvin and from the other eyewitnesses, yes. But there's no evidence, again, of premeditation or gratuitous violence. It wasn't a long-drawn-out thing. It was a mutual fight where Holman was reacting to the threat from Melvin. It's not... What was their weight difference again? The weight difference? Size difference. The size difference. Holman was taller. Melvin is 5'9", I believe, and Holman is, I think, 6'2", Your Honor. And Holman weighs more than Melvin, although it's not specified in the record. However, the fact that there might be a size difference and the victim might not be able to defend himself isn't sufficient to show that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Many victims are defenseless, and it doesn't make the conduct exceptionally brutal or heinous. In Andrews, it was a car shooting where the victims weren't able to defend themselves because of their positions and everything. In that case, the court found that there was no evidence of exceptional brutality or heinousness. For these reasons, I ask that this court either reduce Holman's sentence or remand for resentencing under Issue 3 in the briefs and to vacate the extended-term sentence and remand for resentencing within the non-extended range under Issue 2 in the briefs. Do you think the nature of the body part makes it selected for the infliction of the injury? Makes it more heinous? The nature of the body part, that goes akin to the state's argument that vision is precious and there's something special about eyes or vision that would make it heinous by itself. But the state has cited no cases for the proposition that injuring someone's eyes due to the nature of that body part is, by definition, exceptionally brutal or heinous behavior simply indicative of wanton cruelty, simply because vision is precious. Vision is precious, but so is life. And in the same way that not all crimes resulting in a death are exceptionally brutal and heinous indicative of wanton cruelty, I don't think that this court can make a right-line rule saying that simply because the eyes were injured in this case it's exceptionally brutal or heinous behavior indicative of wanton cruelty. Also, the severity of the injuries in this case is an element of the offense. The permanent nature of the injuries, the blindness, is what makes it aggravated on domestic battery and that's also considered in the sentencing range. You don't think just the... I mean, I know that one of the... Just the injury itself isn't enough, you think, to establish the aggravation that they had to rely on the blindness and therefore could not use that as the enhancement provision? I mean, the injury itself, had it not resulted in blindness, you don't think it would have been enough to establish an aggravated domestic battery? That's a question for the trier effect, Your Honor. In this case, the great bodily harm is the eye injury, and the eye injury is the blindness. Had it been less than blindness, it wouldn't have been great bodily harm, Your Honor. And the way this case was charged, and the way the state argued this case, which was that losing an eye is great bodily harm. There's two eyes here that were lost. Correct. That wasn't separated out in the indictment. It wasn't separated out in the state's argument at trial. It wasn't separated out in the state's argument at sentencing. And the judge certainly didn't separate that out when she found that Holman was subject to domestic injury. You could injure one eye and cause somebody not to be blind. This case is very different than that. Correct, Your Honor. But had it not resulted in blindness, it might not have been aggravated domestic battery. If it was a scratch or a bruise, something akin to that, it wouldn't have been an aggravated domestic battery. It probably would have been just domestic battery. I mean, the injury here is blindness. It's the eye injury, and that's the great bodily harm. Again, that's how it was charged and argued, and that's how it was found. Again, for these reasons, we ask that you reduce the sentence for re-sentencing in the non-extended sentencing range under Issue 2 in the briefs. Thank you. Mr. Hanson. Good morning, Your Honors. May it please the Court, Counsel. Judge Carter, in answer to your question, about the size of the parties, the victim was 62 years of age. This is in the record, 5'3", 147 pounds. The defendant was 5'9", weighed, quote, considerably more. Indeed, the jury saw him as considerably younger. As to the two issues counsel mentioned, first of all, going to a factor inherent in the offense. The judge did not sentence this defendant to an extended term because of mere great bodily harm. She did so because of exceptionally great bodily harm. I won't go into that at great length. We said it in the brief. Saldivar says the judge can consider the degree of harm in sentencing the defendant for a crime which involved harm as an element. The judge was considering the nature and circumstances of this particular offense, as the Thomas case requires. Merely injuring one's eyes significantly would be great bodily harm. Take a person with 20-20 vision. I'm no great optometrist, and making their vision 20-30 or 20-40, I think I'm stating the numbers the right way. That would be great bodily harm, injuring somebody's vision. But here, he pressed with his thumbs, gouging, etc. All this is in my brief. Blinding him in one eye, it had to be removed, and nearly blinding him in the other. The defendant did much more than great bodily harm. He blinded them in one eye, it was surgically removed. The other eye, there's evidence, basically was now only able to determine some light. And when the victim wore special glasses and looked... Shadows. Shadows, something like that. Yeah, it's all on the record. In essence, the defendant was almost wholly blinded. And if that isn't more than simple great bodily harm, very little is. As to the defendant's other argument, this was not, you know, this was exceptionally brutal or heinous behavior. This was not merely a battery during a fight with no evidence of the amount of force required to cause the near blinding. Here we have a younger, heavier, larger defendant who straddled the victim, pinned his arms, and then there's evidence the victim couldn't use his right arm for the previous injury, pressed his thumbs into the victim's eyes, applied his weight, and exalted, quote, there is only one king. That's uncontradicted. That gives you an idea of how brutal or heinous his behavior was. This guy wasn't defending himself, and he wasn't merely damaging someone. He was being brutal, mean-spirited, and nasty about it. He also stopped the victim from calling for aid on the phone. Victim lost an eye, nearly blinded, and other... I've given you the facts. You know, we cite the Yarborough case about throwing caustic substances into the victim's eyes. This case is somewhat similar. I see the distinctions. He didn't throw acid into his eyes, etc., but very few cases do you have this nice exaltation, nice for the state's position. There's only one king. Hickman says you can consider one subsequent conduct at the scene regarding remorse. Exalting there's only one king and keeping the victim from phoning for help says a lot there. He put thumbs into the victim's eyes. His eyes, Your Honor, they're a rather delicate instrument. He was clearly looking to blind him or looking to significantly harm his eyes. Who knows what was in his mind? Vision's invaluable, and this defendant intentionally tried to harm it and succeeded. This was not a slap or a punch to the head where through happenstance, you know, in the skull, etc., I'm looking for the word. The nerve that goes to the eye was damaged. Optic nerve, yes. This was not a slap or a punch that inadvertently caused it. This was happening when the delicate and vital eyes were viciously attacked by the defendant who showed no remorse. Indeed, Your Honor, we've got that Collins standard, which favors the state. I won't go into it in great detail. You know what it is. That concludes my comments. Any questions? Thank you, Your Honor. Ms. Filfi? Two comments briefly, Your Honors. The state now separates out the injuries, saying, oh, there was more than just blindness that occurred here. But this is about what the trial judge said during her ruling and what she specifically relied on. In this case, we have to look at her words, because she explicitly states that she relied on the permanent effects of what happened that day. She relied specifically on the blindness, which is a factor inherent in the offense. We looked this all over, and it says specifically that you cannot rely on the end result. You have to look to the circumstances of the offense. Had the judge said, oh, I'm sentencing Holman to the maximum extended term because of the circumstances of the offense, because of exactly what counsel was saying, the other parts of this, of how it happened, or what the state terms the exultant statement of my client afterwards, that would have been one thing. But that's not what happened here. Here, the court specifically says, I'm relying on the blindness in sentencing Holman to the maximum extended term sentence. Secondly, about that statement of exultation, Holman says there's only one king, according to Melvin. First, it's unclear exactly what he means by this statement. Secondly, the statement doesn't show necessarily that Holman's behavior was grossly ruthless, shockingly evil. Again, this was a mutual fight. It was provoked by Melvin, as the state concedes. Third, a lack of remorse standing alone has not been found sufficient to establish exceptionally brutal or heinous behavior indicative of wanton cruelty. Beyond a reasonable doubt, in the Hickman case cited by the state, there was a lack of remorse plus premeditation. In the Elmhurst Supreme Court case LaPointe, the court looked to the defendant's significant criminal history, premeditation, callous attitude, as well as a complete lack of remorse, where that defendant wore a shirt that said Elmhurst Executioner. For these reasons, again, we ask that this court remand for resentencing. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued as soon as possible. And right now, we will take a brief recess for a panel change.